# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**NEPHRON PHARMACEUTICALS
CORPORATION, NEPHRON S.C., INC.
and NEPHRON STERILE
COMPOUNDING CENTER LLC,**

          **Plaintiffs,**

**v.**                               **Case No:   6:18-cv-1573-Orl-31LRH**

**JENNIFER SHELLY HULSEY, U.S.
COMPOUNDING INC. and ADAMIS
PHARMACEUTICALS CORPORATION,**

          **Defendants.**

_____

## ORDER

      This matter comes before the Court on the Motion to Exclude the Opinions of Plaintiffs'

damages expert, Carrie L. Distler, (Doc. 158) filed by Defendants U.S. Compounding Inc.

("USC") and Adamis Pharmaceuticals Corporation ("Adamis"; collectively, "Defendants"). In

resolving these motions, the Court has considered the response in opposition (Doc. 182) filed by

Plaintiffs Nephron Pharmaceuticals Corporation, Nephron S.C., Inc., and Nephron Sterile

Compounding Center LLC (collectively, "Nephron"), as well as the record developed through an

evidentiary hearing held on December 17, 2020.

## I.      Background

      In this case, Nephron claims that defendant Jennifer Shelly Hulsey ("Hulsey"), a former

Nephron employee, misappropriated trade secrets from it when she was hired by USC. Nephron

asserts that USC and its parent company, Adamis, are liable for directing Hulsey to obtain and

provide them with the alleged trade secrets.[1] Nephron seeks damages and injunctive relief for

violations of the Defend Trade Secrets Act, 18 U.S.C. § 1836, *et seq.*, (DTSA) and the Florida

Uniform Trade Secrets Act (FUTSA). In support of its claim, Nephron retained damages expert

Carrie L. Distler ("Distler") who has rendered opinions on Nephron's damages under unjust

enrichment and reasonable royalty theories. Defendants now challenge the admissibility of

Distler's opinions.

##       II.      Legal Standard

Federal Rule of Evidence 702 governs the admission of expert witness testimony. It

provides that:

> A witness who is qualified as an expert by knowledge, skill, experience,
> training, or education may testify in the form of an opinion or otherwise if:
> (a) the expert's scientific, technical, or other specialized knowledge will help
> the trier of fact to understand the evidence or to determine the fact at issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of
> the case.

Fed. R. Evid. 702. The proponent of the opinion testimony has the burden of establishing each

precondition to admissibility by a preponderance of the evidence. *Rink v. Cheminova, Inc.*, 400

F.3d 1286, 1292 (11th Cir. 2005).

In *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993), the Supreme Court

admonished trial courts to fulfill a gatekeeping role in the presentation of expert testimony. The

Daubert court identified four factors that district courts should consider when assessing the

reliability of an expert's testimony: (1) whether the expert's methodology has been tested or is

capable of being tested; (2) whether the theory or technique used by the expert has been subjected

---

[1] Nephron's claims against Hulsey are currently stayed as she has filed for bankruptcy.

to peer review and publication; (3) whether there is a known or potential error rate of the methodology; and (4) whether the technique has been generally accepted in the relevant scientific community. *See id.* at 593-04. At the same time, the Supreme Court has emphasized that these factors are not exhaustive and are intended to be applied in a "flexible" manner. *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 141 (1999).

## III.   Analysis

Preliminarily, Defendants argue in their Motion that Distler's opinions discussing damages under Nephron's tortious interference claim and its claims against Hulsey should be excluded. (Doc. 158 at 6–8). The parties now stipulate that Distler will not testify at trial regarding Hulsey's alleged wrongdoing if Nephron's claims against her are still stayed. (Doc. 205, ¶ 2). The parties also stipulate that Defendants' argument regarding Nephron's tortious interference claim is moot given the Court's dismissal of that claim. (Doc. 205, ¶ 3; *see* Doc. 196). The Court will not discuss these arguments further and will address Defendants' remaining arguments in turn.

### A.  Alternative Theories of Damages

Defendants argue that because Nephron has presented evidence of damages measured by an unjust enrichment theory, it is barred from asserting its reasonable royalty theory in the alternative. Both the DTSA and FUTSA state that a plaintiff who establishes trade secret misappropriation may recover actual damages and unjust enrichment *or*, "in lieu of damages measured by any other methods," a reasonable royalty. 18 U.S.C. § 1836(b)(3)(B); Fla. Stat. § 688.004(1). While the statutes clearly preclude recovery under an unjust enrichment *and* a reasonable royalty theory, nothing in the text suggests that Nephron can only obtain a reasonable royalty if it fails to prove actual damages or unjust enrichment.[2] According to the plain language

---

[2] Defendants ask the Court to follow *Alphamed Pharmaceuticals Corp. v. Arriva*

of the DTSA and FUTSA, Nephron has the option of pursuing these theories in the alternative. *See Steves & Sons, Inc. v. JELD-WEN, Inc.*, No. 3:16-cv-545, 2018 WL 2172502, at \*2 (E.D. Va. May 10, 2018) (plaintiff sought unjust enrichment or, alternatively, a reasonable royalty under the DTSA and the Texas Uniform Trade Secrets Act); *see also E. Portland Cement Corp. v. F.L. Smidth Inc.*, No. 08-cv-637, 2009 WL 4730545, at \*3 (M.D. Fla. Dec. 7, 2009) (under Florida law, "an election between inconsistent remedies need only occur before judgment is entered") (quoting *Monco of Orlando, Inc. v. ITT Indus. Credit Corp.*, 458 So. 2d 332, 334 (Fla. 5th DCA 1984)).

### B. Apportionment of Damages

Defendants next argue that Distler's opinions must be excluded because she declined to apportion damages among each of the trade secrets Nephron alleges were misappropriated. In calculating Nephron's damages under its unjust enrichment and reasonable royalty theories, Distler considered four of Nephron's alleged trade secrets.[3] (Doc. 174 at 12, 48; Doc. 209 at 10:1–11:16). Distler calculated Nephron's total damages attributed to the alleged use of the four trade secrets without assigning a specific dollar amount to each individual trade secret. (Doc. 209 at 11:24–12:1). Distler testified that she chose this method because the value a salesperson could

---

*Pharmaceuticals, Inc.*, 432 F. Supp. 2d 1319 (S.D. Fla. 2006), which states that a plaintiff can recover "actual loss and unjust enrichment, *or in their absence, a reasonable royalty.*" *Id.* at 1336 (emphasis in original). This language does not support Defendants' proposed interpretation: that actual loss and unjust enrichment must be disproven before a plaintiff can pursue a reasonable royalty. The court in *Alphamed* was only clarifying that FUTSA's damages provision precludes the recovery of any other types of damages, such as nominal damages. *See id.* at 1336–38. Defendants also cite to *Selectica, Inc. v. Novatus, Inc.*, 6:13-cv-1708-Orl-40TBS, 2015 WL 12843840 (M.D. Fla. Sept. 30, 2015) which simply cites to *Alphamed* for the same phrasing. Neither case reaches the result Defendants seek, nor do they even address a situation where a plaintiff sought reasonable royalty damages while also presenting evidence of actual damages or unjust enrichment.

[3] Specifically: (1) the Hospital Customer Lists with the notation of "pretty good" customers; (2) the 503B Sales Summary by Product; (3) the 503B Sales Volume and Revenue by Product; and (4) the Customer Summary Compilations. (Doc. at 12, 48; Doc. 209 at 10:1–11:16).

derive from possessing these four secrets together was greater than just having any one individually. (Doc. 209 at 12:2–13). Distler further stated that she limited her analysis to the four trade secrets to be conservative and tie Nephron's damages to customer and product specific information. (Doc. 209 at 31:12–32:2). Defendants argue that Distler's failure to apportion individual damages among the alleged trade secrets requires exclusion because her method would confuse the jury. Specifically, Defendants assert that if Nephron fails on any of the four trade secrets, the jury cannot extrapolate the damages from her analysis to any trade secret it does find.

Defendants argue that other courts have excluded expert testimony where an expert failed to apportion damages among individual trade secrets. However, these cases are factually distinguishable. *See LivePerson, Inc. v. [24]7.AI, Inc.*, No. 17-cv-01268-JST, 2018 WL 6257460, at *2 (N.D. Cal. Nov. 30, 2018) (expert damages calculation based on 28 trade secrets excluded where jury verdict would only encompass 15 out of the 28 trade secrets); *Ford Motor Co. v. Versata Software, Inc.*, No. 15-11624, 2018 WL 10733561, at *10–11 (E.D. Mich. 2018) (part of court's rationale for excluding expert testimony was that damages calculation encompassed non-trade secret information).[4] Exclusion on this basis is premature and inappropriate because the Court has already determined that the question of whether any of the trade secrets Distler considers were misappropriated is for the jury.[5] (Doc. 196).

---

[4] The court in *Ford Motor Co.* excluded expert testimony for failing to apportion because if the jury found that less than all the secrets were misappropriated, the damages calculation "could only serve to confuse them." *Ford Motor Co.*, 2018 WL 10733561, at *11. This is unpersuasive because the court there was essentially making a factual finding that the plaintiff would be unable to prove all its trade secret claims to a jury. *See id.*

[5] *See, e.g., O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*, 399 F. Supp. 2d 1064, 1076 (N.D. Cal. 2005); *Pawelko v. Hasbro, Inc.*, No. 16-201-JJM-LDA, 2020 WL 42451, at *3–4 (D.R.I. Jan. 3, 2020); *Hunting Energy Servs., Inc. v. Kavadas*, No. 3:15-CV-228, 2018 WL 4539818, at *23 (N.D. Ind. Sept. 20, 2018); *Keystone Transp. Sol., LLC v. Nw. Hardwoods, Inc.*, No. 5:18-cv-00039, 2019 WL 1770162, at *3 (W.D. Va. April 22, 2019).

### C. Reliability[6]

#### 1.      Unjust Enrichment

Defendants argue that Distler's unjust enrichment opinion must be excluded because it is not limited to Hulsey's direct sales. Rather, Defendants assert that Distler erred in considering sales made by Prodigy, a company who makes 503B sales for Defendants, and that there is insufficient evidence to link Prodigy's sales to Defendants' alleged misappropriation. However, Distler does not comment on this link and simply assumes for the purpose of her analysis that Prodigy's sales were connected to the alleged misappropriation. Defendants' concerns here do not pertain to the validity of Distler's methodology or the veracity of the facts she relies upon, but instead fall under the issue of liability. The Court has determined that Nephron can present its misappropriation claims to the jury, which encompass the alleged connection between Defendants' conduct and Prodigy. (*See* Doc. 196).

Defendants also argue that Distler's methodology for narrowing down USC's relevant sales was flawed. To determine which of USC's revenues should be subject to disgorgement, Distler applied the following four criteria to USC's 503B sales: (1) she identified all the customers who purchased the "Five Primary Drugs" she focused her analysis on; (2) she identified customers who had a Customer Summary Compilation generated on the Seagate backup hard drive; (3) she identified customers who appeared on the list of "Pretty Good" accounts which Hulsey provided to USC; and (4) she excluded any customers to whom USC made a sale within a 12-month period before Hulsey began her employment with USC. (Doc. 174, ¶¶ 44–47).

Defendants' contend that Distler did not need every criterion to reach her conclusion and that the criteria did not need to be applied "sequentially." These contentions do not mean Distler's

---

[6] Defendants do not challenge Distler's qualifications. (Doc. 205, ¶ 1).

methodology is flawed. Even Defendants' own rebuttal expert, Donald C. Wiggins, does not criticize Distler's criteria and uses the *exact same criteria* in making his own calculation.[7] Therefore, the Court finds that there is no basis to exclude Distler's unjust enrichment opinion.

### 2.   Reasonable Royalty

In addition to her unjust enrichment calculation, Distler calculated a reasonable royalty for Defendants' alleged misappropriation of Nephron's trade secrets, reflecting a hypothetical negotiation between the parties based on the factors outlined in *University Computing Co. v. Lykes-Youngstown Corp.*, 504 F.2d 518 (5th Cir. 1974). Defendants make a threshold argument with respect to the admissibility of this calculation and several arguments pertaining to the reliability of her calculation which the Court will address separately.

### i.   Profit Margin on Distler's Royalty Calculation

Defendants first argue that Distler's calculated royalty is per se unreasonable because it does not leave them with a profit after accounting for its present revenue value of the identified customers. This is inaccurate because Distler opines that the reasonable royalty range should be between $4.5 million and $5 million, which, after accounting for the present customer revenue stream of $5.1 million, leaves Defendants with a profit ranging from $100,000 to $600,000. (*See* Doc. 209 at 24:23–25:3, 25:16–24; Doc. 174, ¶ 109). It is more accurate to say that Defendants' position is that Distler's calculations do not leave them with *enough* profit after accounting for the present value of the customers in question.[8]

---

[7] Wiggins added one more criterion for his calculation, excluding any sales not made by Hulsey. This does not speak to the reliability of Distler's methods and instead represents Wiggins' misguided attempt to present an opinion on a legal issue outside his area of expertise.

[8] Although this is framed as a reliability argument, this is also a threshold legal argument with respect to the royalty opinion because Defendants do not comment on Distler's method for reaching her calculation, but rather argue that the amount is "inherently" unreliable.

Defendants cite to *Georgia-Pacific Corp. v. U.S. Plywood Corp.*, 318 F. Supp. 1116 (S.D.N.Y. 1970) for their contention that a reasonable royalty *must* leave the defendant with a profit to be reasonable. However, this case provides no analysis elaborating on this principle and merely contains the conclusory statement that "the very definition of a reasonable royalty" requires this interpretation. *Id.* at 1122. As is the case in Distler's report, a reasonable royalty can be based on a hypothetical negotiation between parties at the time the alleged misappropriation occurred. *See Univ. Computing Co.*, 504 F.2d at 537. Because a hypothetical negotiation is done without the benefit of hindsight, it stands to reason that parties could reach an agreement that ultimately leaves the purchaser with lower profits than it anticipated.[9] Therefore, the Court declines to apply a bright line rule deeming that any royalty which leaves a purchaser without significant a profit is per se unreasonable. *See Golight, Inc. v. Wal-Mart Stores, Inc.*, 355 F.3d 1327, 1338 (Fed. Cir. 2004) ("There is no rule that a royalty be no higher than the [patent] infringer's net profit margin.") (citations omitted).[10]

### ii. Reliability of Distler's Royalty Calculation

Defendants also raise six arguments pertaining to certain variables and assumptions in Distler's royalty calculation.

Defendants first argue that Distler erred by relying on information provided by Nephron's executives in selecting a ten-year customer relationship lifespan. (Doc. 158 at 20–21). Distler

---

[9] To the extent that Defendants argue that such an outcome renders the hypothetical unrealistic, that is a matter of weight that Defendants may raise at trial and does not mandate exclusion on reliability grounds.

[10] Although *Golight* is a patent case, its analysis applies here because "the proper measure of damages in a case of trade secret appropriation is to be determined by reference to the analogous line of cases involving patent infringement." *Univ. Computing Co.*, 504 F.2d at 535 (citations omitted).

estimated a ten-year customer lifespan when calculating her royalty after considering statements from Nephron's representatives based on Nephron's Integrated Delivery Networks (IDN) and Group Purchasing Organizations (GPO) agreements with its customers. (Doc. 174, ¶ 94). Defendants assert that because the IDN and GPO agreements are not exclusive and do not bind Nephron's customers to any course of conduct and because the representations from Nephron's representatives are inherently improper, Distler's estimate is not reliable. "There is nothing problematic *per se*" with Distler relying on the information here and Defendants raise no particular issues with Distler's source beyond general concerns which speak to weight and not reliability. *See Superior Consulting Servs., Inc. v. Shaklee Corp.*, No. 6:16-cv-2001-Orl-31GJK, 2018 WL 2323433, at *2 (M.D. Fla. May 22, 2018).

Defendants next argue that Distler's reliance on eight months of sales data was too limited to extrapolate revenues to the ten-year customer lifespan. (Doc. 158 at 21). Distler considered revenue from 49 customers on the "pretty good" account list and customer summary compilations for the eight-month period of 2018 before Hulsey left Nephron. (Doc. 209 at 23:10–24). Distler testified that she selected this range to reflect Nephron's sales capabilities for a period when its 503B business was "mature" and to exclude the period after Hulsey left to work at USC. (*Id.* at 28:12–22). Defendants argue that Distler improperly limited the date range and should have considered sales from the entirety of 2018 and 2019. Defendants again do not criticize Distler's methodology here or the accuracy of the figures she uses, but merely disagree with her reasons for limiting the dates she considered. Again, this is an issue of weight that Defendants may address on cross examination.

Defendants also raise the same argument they did with Distler's unjust enrichment opinion, asserting that she only should have considered the six customers to whom Hulsey directly made

sales. (Doc. 158 at 22). As stated earlier, the extent to which Defendants' alleged misappropriation and use of Nephron's trade secrets extends to any number of customers is an issue of liability for the jury and is not an appropriate basis for exclusion of Distler's damages calculation.

Defendants' final three arguments speak to the weight of data Distler relied on. They argue that Distler's assumption that Defendants would receive 100% of the revenues from the identified customers after acquiring a hypothetical license was improper. (Doc. 158 at 22–23). Defendants point to several factors which would limit its ability to compete for those revenues which, while perhaps valid points to raise on cross, again speak to the weight that should be given to the royalty calculation and not its reliability. Defendants next argue that Hulsey's projected profits were unreliable because they were made to secure her employment with USC. (Doc. 158 at 23–24). Whether those figures were truly representative is clearly a matter of credibility and weight beyond the scope of the Court's analysis here. And lastly, Defendants argue that Distler's "market approach" was flawed because she considered data from a non-503B company. (Doc. 158 at 24– 25). As part of her royalty calculation, Distler pulled transactions from four other pharmaceutical companies to use as comparable transactions in setting up the hypothetical licensing of Nephron's trade secrets. (Doc. 174, ¶ 72). Defendants argue that one company, The Harvard Drug Group, LLC, should have been excluded as insufficiently comparable to Nephron because it was not a 503B company. This objection again speaks to the weight of Distler's opinion and not the reliability of her methodology.

Therefore, the Court finds that Distler's royalty calculation is reliable and should not be excluded under Federal Rule of Evidence 702 or *Daubert*.

### IV.    Conclusion

Defendants' Motion to Exclude Distler's expert report (Doc. 158) is therefore **DENIED**.

**DONE** and **ORDERED** in Chambers, Orlando, Florida on January 11, 2021.



GREGORY A. PRESNELL
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Party