**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

NEPHRON PHARMACEUTICALS
CORPORATION, NEPHRON S.C., INC.
and NEPHRON STERILE
COMPOUNDING CENTER LLC,

      **Plaintiffs,**

v.                                                        Case No: 6:18-cv-1573-GAP-LRH

JENNIFER SHELLY HULSEY, U.S.
COMPOUNDING INC. and ADAMIS
PHARMACEUTICALS CORPORATION,

      **Defendants.**

## ORDER

This matter comes before the Court on Plaintiffs' Motion for Order to Show Cause why Defendants should not be adjudged in civil contempt for failure to comply with the Consent Preliminary Injunction (Doc. 129) and the Court's subsequent Order (Doc. 131). On referral, Magistrate Judge Leslie R. Hoffman issued a Report and Recommendation (Doc. 212) recommending that the Court hold Defendants in civil contempt and grant in part and deny in part the sanctions sought in the Motion. Defendants filed an Objection to the Report (Doc. 216) and Plaintiffs filed a Response (Doc. 220). Upon *de novo* review of the above, the Report will be confirmed and adopted.

    **I.**    **Background**

In this case, Plaintiffs Nephron Pharmaceuticals Corporation, Nephron S.C., Inc., and Nephron Sterile Compounding Center LLC (collectively, "Nephron") claim that Defendant Jennifer Shelly Hulsey ("Hulsey"), a former Nephron employee, misappropriated trade secrets

when she was hired by U.S. Compounding Inc. ("USC"). Nephron asserts that USC and its parent company, Adamis Pharmaceuticals Corporation ("Adamis"; collectively, "Defendants"), are liable for directing Hulsey to obtain and provide them with the alleged trade secrets.[1]

At the outset of this litigation, the parties agreed to a Consent Preliminary Injunction ("CPI"), which the Court entered on October 15, 2018. (Doc. 29). On June 27, 2020, Nephron filed a Motion for Order to Show Cause (Doc. 129) claiming that Defendants violated the CPI by using Nephron data they acquired from a former Nephron employee, Jessica Lane ("Lane").[2]

## II. Legal Standards

### A. Review of Reports and Recommendations

In resolving objections to the recommendation of a magistrate judge, the district judge must determine *de novo* any part of the magistrate judge's disposition that has been properly objected to.[3] Fed. R. Civ. P. 72(b)(3). *De novo* review requires independent consideration of factual issues based on the record. *Jeffrey S. ex rel. Ernest S. v. State Bd. of Educ. of Ga.*, 896 F.2d 507, 513 (11th Cir. 1990). After conducting a careful and complete review of the findings and recommendations, the district judge "may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." Fed. R. Civ. P. 72(b)(3).

### B. Civil Contempt

---

[1] Nephron's claims against Hulsey are currently stayed as she has filed for bankruptcy.

[2] The Court adopts and incorporates by reference the "Factual Background" section of the Report and Recommendation. (Doc. 212 at 2–6).

[3] Where a litigant does not make specific objections to a magistrate judge's factual findings, those findings are reviewed for clear error. *Garvey v. Vaughn*, 993 F.2d 776, 779 n.9 (11th Cir. 1993).

An injunction can be enforced through a contempt proceeding. *Doe v. Bush*, 261 F.3d 1037, 1064 (11th Cir. 2001). A finding of civil contempt must be supported by clear and convincing evidence. *McGregor v. Chierico*, 206 F.3d 1378, 1383 (11th Cir. 2000). "The clear and convincing evidence must establish that: (1) the allegedly violated order was valid and lawful; (2) the order was clear and unambiguous; and (3) the alleged violator had the ability to comply with the order." *Id.* "In determining whether a party is in contempt of a court order, the order is subject to reasonable interpretation, though it may not be expanded beyond the meaning of its terms absent notice and an opportunity to be heard." *Riccard v. Prudential Ins. Co.*, 307 F.3d 1277, 1296 (11th Cir. 2002).

**III.    Analysis**

Defendants object to the Report and Recommendation on two grounds, which the Court will address in turn.

**A. Whether the CPI is Clear and Unambiguous**

Defendants argue that Judge Hoffman erred in finding that the CPI applies to USC's hiring of Lane and USC's subsequent use of the data Lane took from Nephron.[4] As Judge Hoffman noted, "Defendants do not dispute that the CPI was valid and lawful, or that they were able to comply with the CPI." (Doc. 212 at 8). Therefore, the question here is whether the CPI is clear and unambiguous and whether its terms encompass Defendants' conduct. Defendants contend that the CPI only prohibits their use of data that Hulsey took from Nephron.

---

[4] Defendants do not raise any objections to Judge Hoffman's factual findings or contend that Nephron failed to produce clear and convincing evidence that Defendants violated the CPI if it applies here. The Court agrees with Judge Hoffman's findings on these points.

The Court must interpret a consent decree, like the CPI here,[5] "as [the Court] would a contract, applying principles of Florida's general contract law." *Frulla v. CRA Holdings, Inc.*, 543 F.3d 1247, 1252 (11th Cir. 2008). The Court must construe any contract according to the parties' intent and where the terms of a contract are unambiguous, "we must determine the parties' intent from within the four corners of the contract." *Id.* "A contract is ambiguous where it is susceptible to two different interpretations, each one of which is reasonably inferred from the terms of the contract." *Id.* (internal quotation marks omitted). The Court must first look to the language of the CPI. *See Id.*

Subsection (a) of the CPI states that "Defendants shall not disclose, use, or communicate, in any manner whatsoever, either directly or indirectly, Nephron's trade secrets or confidential business information including, but not limited to, the Protected IP." (Doc. 29 at 3). The term "Protected IP" is defined in the CPI to mean "current and prospective customer lists and related databases, pricing data, purchasing histories, consumer data, market intelligence and strategies, product formulations and development information, proprietary manufacturing processes, and overall industry and product expertise." (*Id.* at 2 n.1). Subsection (j) of the CPI further states that "U.S. Compounding shall not, directly or indirectly, use any of Nephron's trade secrets or confidential business information including, without limitation, the Protected IP in any manner including, without limitation, to solicit customers to do business with U.S. Compounding."

The CPI plainly states that Defendants are prohibited from using Nephron's "Protected IP" "in any manner whatsoever." The term "Protected IP" plainly encompasses the customer lists and pricing information that Lane took from Nephron and used in her employment with USC. Absent

---

[5] This includes consent injunctions like the CPI. *See F.T.C. v. Leshin*, 618 F.3d 1221, 1231 (11th Cir. 2010) (quoting *Sierra Club v. Meiburg*, 296 F.3d 1021, 1029 (11th Cir. 2002)) (applying state contract law principles to interpret a stipulated injunction).

from the CPI is any provision even suggesting that the terms of subsections (a) and (j) are limited to the data USC acquired from Hulsey. As Judge Hoffman correctly points out in her Report, the Court would need to add language to the CPI to give it Defendants' desired interpretation. Therefore, the terms of the CPI are unambiguous and clearly apply to Defendants' conduct here.

Turning to Defendants' arguments in support of their objection, Defendants first assert that Fed. R. Civ. P. 65(d) requires the Court to construe the CPI so narrowly that it would only apply to the data taken by Hulsey. While courts cannot expand an order's coverage beyond the meaning of its terms, this does not mean that a court must supply language to restrict the clear terms of an injunction.[6]

Defendants next argue that the language of the CPI "is just the starting point" and that the Court must consider the underlying purpose of the order. However, courts applying this "thrust of the order" do so only as an aid to construction when the order is ambiguous. *See Harris v. City of Philadelphia*, 47 F.3d 1342, 1353 (3d Cir. 1995). Applying this approach to the CPI would simply serve to create an ambiguity where none exists.[7]

Defendants also argue that Judge Hoffman erred in declining to apply *New York Telephone Co. v. Communications Workers of America, AFL-CIO*, 445 F.2d 39 (2d Cir. 1971). *New York Telephone* was in a different posture than this case. There, the parties agreed to continue an ex parte temporary restraining order until the district court ruled on a motion for a preliminary

---

[6] Defendants also argue on this point that a CPI covering Lane's conduct would exceed a district court's authority because it goes beyond "the general scope of the case made by the pleadings." (Doc. 216 at 4). However, the general scope of this case clearly includes confidential Nephron data misappropriated by Defendants.

[7] Part of the "thrust" Defendants point to is that they "had no reason to agree to preliminary injunctive relief as broad as suggested by [Nephron]." However, Defendants are sophisticated parties who were aided by counsel and entered the CPI without objection.

injunction or the parties settled. *N.Y. Tel.*, 445 F.2d at 43. The contemnor there had not negotiated the effective terms of the TRO and sought to either contest the motion for a preliminary injunction or settle the case. The Second Circuit declined to enforce the broad terms in the TRO because the underlying papers submitted in support were aimed at a specific type of conduct. *Id.* at 46. In this case, the Court entered a limited TRO covering the data Hulsey took after considering Nephron's moving papers. (Doc. 12 at 12). The parties then negotiated and agreed to a CPI with broader terms. There are no "moving papers" for the Court to consider here and *New York Telephone* is therefore distinguishable.[8]

Defendants next argue that their proposed interpretation is consistent with the plain language of the CPI and would not render any provision of the CPI superfluous. However, to reach that interpretation, the Court would need to change the language of the CPI. Because the CPI is unambiguous, the Court is confined to the "four corners" of the document. *Frulla*, 543 F.3d at 1252. The Court cannot circumvent the intent of the parties as outlined by the CPI by changing the terms of the document, regardless of whether such a change is consistent with the overall document or whether that change would not be superfluous. *See id.*

And last, Defendants argue that the CPI is ambiguous under Florida contract law because it contains a latent ambiguity.[9] A latent ambiguity occurs where "a contract fails to specify the rights or duties of the parties under certain conditions or in certain situations." *Hunt v. First Nat. Bank of Tampa*, 381 So. 2d 1194, 1197 (Fla. 2d DCA 1980). Latent ambiguities can be resolved by

---

[8] As Judge Hoffman correctly points out, *New York Telephone* is also factually distinct from this one, involving the applicability of a TRO to a subject matter unrelated to the one before the district court there.

[9] Defendants also argue that Judge Hoffman erred in implying that they waived any arguments that the CPI is ambiguous. The Court declines to address this point because it has fully considered Defendants' arguments as to the ambiguity of the CPI.

extrinsic evidence. *Id.* Defendants argue that the CPI is clear on its face and that it became ambiguous when USC hired Lane and used the data she took from Nephron. This is not a latent ambiguity because the CPI clearly applies to this situation.

Judge Hoffman was correct in finding that the CPI is clear and unambiguous and, based on the evidence submitted, Defendants clearly violated the terms of the CPI.

### B. Sanctions

Defendants also object to the sanctions Judge Hoffman recommended, arguing that any sanctions imposed beyond attorney's fees and costs incurred in preparation of the Motion for Order to Show Cause are inappropriate.[10] Specifically, Defendants object to (1) the award of costs incurred for forensic analysis and preservation, (2) the coercive daily fine, and (3) any attorney's fees and costs that relate to Lane's subpoena and deposition.

Defendants argue that the forensic costs and daily fine are both inappropriate on due process grounds because Nephron did not specifically request these sanctions in its motion and Defendants lacked an adequate opportunity to respond. However, Nephron requested forensic costs at the evidentiary hearing and Defendants had the opportunity to respond there.[11]

As to the daily coercive fine, the Court has broad discretion to impose this sanction and notes that a "contemnor need only be afforded the opportunity to purge his sanction of a fine, in the civil context, where a fine is not compensatory." *Leshin*, 618 F.3d at 1239 (citing *Int'l Union, United Mine Workers of Am. V. Bagwell*, 512 U.S. 821, 829 (1994)). The daily fine is appropriate

---

[10] Defendants also briefly state that they deserve no sanctions. Defendants declined to offer any argument in support of this assertion and the Court declines to consider it further.

[11] Any potential due process concerns relating to the forensic costs are further dispensed by the fact that Defendants have fully briefed the issue through this objection which the Court reviews *de novo*.

here because Defendants have yet to show compliance with the CPI and Nephron is entitled to forensic costs. Defendants will have an opportunity to demonstrate compliance before they incur the fine, and the amount of the fine will be addressed in a subsequent hearing.

Defendants also raise several practical concerns regarding their ability to comply with the forensic preservation requirement and how they can demonstrate such compliance to avoid the fine. They first contend that they do not have the legal right to control any data on Lane's personal devices. Defendants misinterpret this requirement. As stated in the Report and Recommendation, Defendants must "comply with subsection (b) of the CPI with respect to documents retained by Lane *in her employment with Defendants . . . .*" Defendants are perfectly capable of controlling any data they possess by virtue of Lane's employment with USC. Next, Defendants state that the report "does not adequately apprise Defendants of what precise acts are required for compliance." All the Court can say to this point is that subsection (b) of the CPI spells out the requirements in adequate detail.

Defendants last assert that any attorney's fees relating to Lane's subpoena and deposition are inappropriate because they were not related to Nephron's claims in this case and thus were not permissible under Fed. R. Civ. P. 26(b). Notwithstanding the fact that Defendants declined to raise this issue previously, Nephron's actions taken to ensure compliance with, and enforcement of the CPI are clearly within the scope of this case. Defendants' contention that these costs are not warranted because Nephron somehow already reaped a benefit from Lane's deposition is nonsensical. The Court struggles to see how more litigation can be construed as a benefit to Nephron.

**IV.    Conclusion**

Accordingly,

1. Defendants' Objection (Doc. 216) to the Report and Recommendation on Plaintiffs' motion is **OVERRULED**; the Report and Recommendation (Doc. 212) is **CONFIRMED** and **ADOPTED** as part of this order.

2. The Court holds Defendants in civil contempt for violating the Consent Preliminary Injunction (Doc. 29).

3. Defendants shall comply with Subsection (b) of the Consent Preliminary Injunction with respect to Nephron documents retained by Jessica Lane in connection with her employment by Defendants.

4. Within 14 days of this order, Plaintiffs shall file their application for costs and fees as referenced in paragraphs 2 and 4 on page 28 of the Report and Recommendation (Doc. 212 at 28). Defendants may respond in writing within 14 days thereafter. By separate notice, the Court will set an evidentiary hearing on this issue and the coercive daily fine to be imposed against Defendants pursuant to the Report and Recommendation at paragraph 5 on page 28 (Doc. 212 at 28).

**DONE** and **ORDERED** in Chambers, Orlando, Florida on March 1, 2021.

GREGORY A. PRESNELL
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Party